**MORRISON COHEN LLP**
909 Third Avenue
New York, NY  10022
(212) 735-8600
Christopher Milito
Robert K. Dakis
Mark S. Jarashow
David J. Kozlowski

Attorneys for S.B. Diamond Corp.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>THE D&M CAPITAL GROUP, LLC,<br><br>Debtor. | Chapter 11<br>Case No. 19-11711 (SCC) |
| S.B. DIAMOND CORP.,<br><br>Plaintiff,<br><br>v.<br><br>ESSEX GLOBAL TRADING, INC., and THE D&M CAPITAL GROUP, LLC<br><br>Defendants. | Adversary Proceeding<br><br>Case No. _____ (SCC) |

## COMPLAINT

S.B. Diamond Corp. as and for its Complaint against Essex Global Trading, Inc. and The D&M Capital Group, LLC respectfully states as follows:

### INTRODUCTION

1. S.B. Diamond Corp. ("SBDC") brings this adversary proceeding in order to recover its interests in precious gemstones, to wit: its 100% ownership of a Ruby, its 50%

ownership of a Diamond, and its 33% ownership interest in a Sapphire set in a ring (the "Sapphire" – and together with the Ruby and Diamond, the "Gemstones"). Each of the foregoing were delivered to the Debtor, as bailee, pursuant to a pair of "memoranda" (the SBDC Memo and the SBDC Sapphire Memo), a standard form bailment agreement used in the gemstones industry. Each of the memoranda explicitly provides that (i) SBDC retains full ownership over the Ruby and the Diamond and the 33% ownership interest in the Sapphire, (ii) Debtor bears all the risk of loss while the Gemstones are in its possession, (iii) SBDC has the right to the return of the Gemstones by the Debtor upon demand, and (iv) Debtor has no right to sell, hypothecate, transfer, or otherwise dispose of the Gemstones.

2. Despite the SBDC Memo and the SBDC Sapphire Memo each prohibiting it from doing so, the Debtor delivered the Gemstones to Essex Global Trading, Inc. ("Essex"), pursuant to its own memoranda (the "D&M Memos"). Yet, after the Debtor delivered the Gemstones to Essex, Essex refused to return them upon the Debtor's demand that it do so.

3. As a result of Essex's refusal to return the Gemstones to the Debtor, the Debtor has been incapable of returning the Gemstones to SBDC upon its demand, as required by the SBDC Memo and the SBDC Sapphire Memo. Essex has also refused to return the Gemstones directly to SBDC, despite its knowledge of the SBDC Memo and the SBDC Sapphire Memo and the fact that the Gemstones are not 100% owned by the Debtor.

4. Due to Essex's refusal to return the Gemstones to either the Debtor or SBDC, SBDC has been forced to commence this Adversary Proceeding in order to (i) determine its property interests in the Gemstones, and (ii) enforce its rights under the SBDC Memo and the SBDC Sapphire Memo to obtain the return of its property interests from the non-debtor parties.

## THE PARTIES

5. S.B. Diamond Corp. is a New York corporation having an address at 50 West 47th Street, Suite 1611, New York, New York 10036.

6. Essex Global Trading, Inc. is a New York corporation having an address at 580 5th Avenue, 21st Floor, New York, New York 10036.

7. The D&M Capital Group, LLC ("D&M" or "Debtor") is a New York corporation having an address at 592 Fifth Avenue, 5th Floor, New York, New York 10036.

8. On May 28, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for bankruptcy relief under Chapter 11 (the "Bankruptcy Petition").

## JURISDICTION AND VENUE

9. This adversary proceeding is brought pursuant to 11 U.S.C.§§ 105(a), 541, and 542 and Rule 7001 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), in order to obtain a declaratory judgment regarding the Debtor's non-interest in the property belonging to SBDC consisting of the Ruby and directing Essex to return the Ruby to SBDC, as well as a declaratory judgment regarding the Debtor's non-interest in the 50% of the Diamond owned by SBDC and the 33% of the Sapphire owned by SBDC, and directing Essex to return those stones as well.

10. This Court has jurisdiction over this adversary proceeding by virtue of 28 U.S.C. §§157(a) and (b), 1334(b), and the "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court of New York (Ward, Acting C.J.), dated July 10, 1984. This Court has *in personam* jurisdiction over the Defendant pursuant to the applicable Bankruptcy Rules and CPLR, including section 302 of the CPLR, as well as the facts set forth herein.

11. This is a core proceeding under 28 U.S.C. §157(b)(2)(A), (E) and (O).

3

12. Venue is proper in this district pursuant to 28 U.S.C. §1409(a) because this proceeding arises in the underlying Chapter 11 case pending in this district or arises in, or is related to, the underlying Chapter 11 case.

### FACTUAL ALLEGATIONS

13. SBDC is a premier diamond and precious gemstone dealer in New York City and has decades of experience with the sourcing, manufacturing, and distribution of diamonds and other precious jewels.

14. On December 4, 2018, SBDC delivered to the Debtor two precious gemstones, including: (i) 1 Burmese ruby gemstone with a weight of 7.02 karats (the "Ruby"); and (ii) one square emerald cut diamond with a weight of 10.2 karats (the "Diamond").

15. Delivery of the Ruby and Diamond was evidenced by a memorandum, Memo # 3692 (the "SBDC Memo"), executed by the Debtor, which recorded the details and terms and conditions of the delivery from SBDC to the Debtor. A true and correct copy of the SBDC Memo is annexed hereto as Exhibit A.

16. The Diamond was a "partnership stone" that was owned in a 50/50 partnership between the Debtor and SBDC.

17. The SBDC Memo states the value of the Burma Ruby as $3,510,000.00 and the value of the Diamond as $1,202,400.00, for a combined value of the SBDC Stones of $4,712,400.00.

18. On February 26, 2019, SBDC delivered to the Debtor another precious gemstone in its possession: 1 Kashmiri sapphire that was set in a ring with a weight of 23.38 karats (the sapphire plus its ring: the "Sapphire").

19. The Sapphire was a "partnership stone" that was owned in partnership between the Debtor and SBDC. SBDC owned 33% of the Sapphire.

20. SBDC's delivery of its interests in the Sapphire to the Debtor was recorded by another memorandum, Memo # 3714 (the "SBDC Sapphire Memo"), executed by the Debtor, which recorded the details and terms and conditions of the delivery of the Sapphire from SBDC to the Debtor. A true and correct copy of the SBDC Sapphire Memo is annexed hereto as Exhibit B.

21. The SBDC Sapphire Memo states the value of the Sapphire as $7,000,000.00, in total. Accordingly, SBDC's 33% ownership interests in the Sapphire is worth $2,333,333.33.

22. Each of the SBDC Memo and the SBDC Sapphire Memo contained identical language concerning the ownership of the Gemstones and the rights and obligations of each of SBDC and the Debtor with respect to the disposition and return of the Gemstones.

23. Each of the SBDC Memo and the SBDC Sapphire Memo makes clear that each of the Gemstones were delivered to the Debtor only for examination and inspection by prospective purchasers, upon the express condition that all such merchandise was to remain the property of SBDC.

24. Pursuant to each of the SBDC Memo and the SBDC Sapphire Memo, if a prospective purchaser wished to purchase any of the Gemstones, the Debtor would have been required to either (i) put the buyer in touch with SBDC to purchase the Ruby directly from SBDC; or (i) would have had to first buy the SBDC's 50% interest in the Diamond or SBDC's 33% interest in the Sapphire from SBDC prior to selling them to the prospective purchaser.

25. Specifically, each of the SBDC Memo and the SBDC Sapphire Memo provides, in pertinent part, that:

5

> The merchandise described below is delivered to the undersigned. . . . on memorandum, at your risk from all hazards, regardless of the cause of the loss or damage, only for examination and inspection by prospective purchasers, upon the express condition that all such merchandise shall remain the property of S.B. DIAMONDS CORP. ("S.B.") and shall be returned on demand, in full, in its original form. Until the merchandise is returned and actually received by S.B., you shall remain fully responsible (both – personally and in your representative capacity) for the merchandise, and in the event of damage or loss, whether caused by you or by another, whether or not under your control, you will indemnify S.B. immediately by payment of the stated value which represents the extent of the actual loss (and is not intended to constitute a price for the sale for the merchandize), plus legal fees of twenty percent (20%) of the memorandum value, plus costs, disbursement and interest (at the maximum legal rates), if the matter is forwarded to an attorney. . . . You acquire no right or authority to sell, pledge, hypothecate or otherwise dispose of the merchandise, or any part thereof, by memorandum or otherwise, . . . A sale of all or any portion of the merchandise shall occur only if an when S.B. agrees and you shall have received from S.B. a separate invoice.

(Exhibits A and B).

26.     Upon information and belief, in or about early 2019, Essex informed the Debtor that they knew of an individual who was travelling to New York from Russia and was interested in viewing and potentially purchasing valuable diamonds and other precious gemstones. Essex asked the Debtor to provide it with precious gemstones that it could show to the potential buyer.

27.     Upon information and belief, in anticipation of the potential buyer's arrival in New York, the Debtor, in violation of the express terms of the SBDC Memo, set the Ruby and the Diamond in rings which it intended to show to Essex's prospective Russian buyer along with the Sapphire.

28.     On March 28, 2019, the Debtor delivered the Burma Ruby, in the ring that the Debtor had set it in, to Essex. That delivery was recorded by a memorandum, Memo # 5276

6

(the "D&M Ruby Memo"), signed by Essex, which purported to record the details and terms and conditions of the delivery of the Burma Ruby from the Debtor to Essex. A true and correct copy of the D&M Ruby Memo is annexed hereto as Exhibit C.

29. On May 9, 2019, the Debtor delivered the Diamond to Essex. That delivery was recorded by a memorandum, Memo # 5296 (the "D&M Diamond Memo" and, together, with the D&M Ruby Memo, the "D&M Memos"), signed by Essex, which purported to record the details and terms and conditions of the delivery of the Diamond from the Debtor to Essex. A true and correct copy of the D&M Diamond Memo is annexed hereto as Exhibit D.

30. On May 17, 2019, the Debtor delivered the Sapphire to Essex. That delivery was recorded by a memorandum, Memo # 5302 (the "D&M Sapphire Memo" and, together, with the D&M Ruby Memo and the D&M Diamond Memo, the "D&M Memos"), signed by Essex, which purported to record the details and terms and conditions of the delivery of the Sapphire from the Debtor to Essex. A true and correct copy of the D&M Sapphire Memo is annexed hereto as Exhibit E.

31. The D&M Memos each contained identical language concerning the rights and obligations of each of the Debtor and Essex with respect to the disposition and return of the respective gemstones governed by each memorandum.

32. Pursuant to the D&M Memos, the Gemstones were provided by the Debtor to Essex "only for examination and inspection, upon express condition that all such merchandise shall remain the property of D&M . . . ."

33. Specifically, the D&M Memos each provided, in pertinent part, that:

> The merchandise described above is delivered to you on memorandum, at your risk from all hazards, regardless of the cause for the loss or damage, only for examination and inspection, upon

7

> express condition that all such merchandise shall remain the property of D&M Capital Group, LLC and shall be returned on demand, in full in its original form. Until the merchandise is returned and actually received by us, you are fully responsible therefor, and in the event of damage or loss for whatever reason, whether caused by you or another, whether or not under your control, you will indemnify us immediately by payment of the amount in the column Amount (US$) above which represents the extent of the actual loss and is not intended to constitute a price of the sale of the merchandise. You acquire no right of authority to sell, pledge, hypothecate, or otherwise dispose of the merchandise, or any part thereof by memorandum or otherwise . . . .

(Exhibits C, D, and E).

34. Upon information and belief, in or about May 2019, Essex told the Debtor that it was not going to return the Gemstones.

35. On May 28, 2019, the Debtor filed a voluntary petition for bankruptcy relief under Chapter 11.

36. Upon learning that Essex had informed the Debtor that it would not return the Gemstones, SBDC demanded that the Debtor return the Gemstones, or the value of its 33% interest in the Sapphire and its 50% interest in the Diamond, pursuant to the terms of the SBDC Memo and the SBDC Sapphire Memo. In response, the Debtor advised SBDC that it could return neither the Gemstones, nor SBDC's 33% interest in the Sapphire, nor SBDC's 50% interest in the Diamond, because Essex would not return the Gemstones to the Debtor.

37. Subsequently, on or about May 30, 2019, counsel for SBDC sent a letter to Essex, enclosing the SBDC Memo and the D&M Memos, demanding the "immediate return of the SBDC Stones" by no later than May 31, 2019. A true and correct copy of the May 30 2019 letter is annexed hereto as Exhibit F.

38.   In response to SBDC's counsel's May 30, 2019 letter, Essex informed SBDC that it would not return the Gemstones.

39.   To date, Essex has refused to return the Gemstones to SBDC or the Debtor.

**FIRST CAUSE OF ACTION**
**(Declaratory Judgment - 28 U.S.C. §2201 *et. seq.*,)**

40.   SBDC hereby repeats and realleges the allegations contained in paragraphs 1 through 38 above as if fully set forth herein.

41.   The Declaratory Judgment Act, 28 U.S.C. §2201 *et. seq.*, authorizes (with certain limitations not relevant here) any court of the United States, in cases of actual (justiciable) controversy within the jurisdiction of those courts, to declare the rights and other legal relations of any interested party seeking such declaration.  Further, any such declaration shall have the force and effect of a final judgment or decree, and further necessary or proper relief based on a declaratory judgment or decree may be granted.  Federal Rule of Bankruptcy Procedure 7065 sets out the procedural guidelines for application of this Act in Bankruptcy cases.

42.   The matters that are the subject of this Adversary Complaint constitute an actual (justiciable) controversy within the jurisdiction of this Court.

43.   SBDC delivered the Ruby to the Debtor pursuant to the SBDC Memo, which prohibited the Debtor from disposing of the Ruby in any way, including a prohibition on the Debtor selling, pledging, hypothecating or otherwise disposing of the Ruby, or any part thereof, by memorandum or otherwise.

44.   SBDC had the right to the immediate return of the Ruby upon its demand to the Debtor that it do so. Given that the Debtor has no legal, equitable, ownership, or economic

interest in the Ruby, the Debtor's possession of the Ruby was a bailment. Therefore, the Ruby is not property of the bankruptcy estate.

45. Based on the foregoing, SBDC seeks an Order from this Court declaring that: (i) the Ruby is the property of SBDC; (ii) the Debtor lacks any interest or ownership over the Ruby; and (iii) the Ruby is not property of the Debtor's bankruptcy estate.

46. A judgment expressly finding that the Ruby is the property of SBDC and not the property of the Debtor or of the bankruptcy estate is warranted under Bankruptcy Code section 541(b).

### SECOND CAUSE OF ACTION
**(Declaratory Judgment - 28 U.S.C. §2201 *et. seq.*,)**

47. SBDC hereby repeats and realleges the allegations contained in paragraphs 1 through 45 above as if fully set forth herein.

48. As stated above, the matters that are the subject of this Adversary Complaint constitute an actual (justiciable) controversy within the jurisdiction of this Court.

49. SBDC delivered its 33% interest in the Sapphire and its 50% interest in the Diamond to the Debtor pursuant to the SBDC Memo and the SBDC Sapphire Memo, which prohibited the Debtor from disposing of SBDC's interests in any way, including a prohibition on the Debtor selling, pledging, hypothecating or otherwise disposing of the Diamond or the Sapphire, or any part thereof, by memorandum or otherwise.

50. SBDC had the right to the immediate return of the Sapphire including its 33% interest therein, and the Diamond, including its 50% interest therein, upon its demand to the Debtor that it do so. Given that the Debtor has no legal, equitable, ownership, or economic interest in SBDC's 33% interest in the Sapphire, or in SBDC's 50% interest in the Diamond, the

10

Debtor's possession of those interests was a bailment. Therefore, neither SBDC's 33% interest in the Sapphire nor SBDC's 50% interest in the Diamond is property of the bankruptcy estate.

51. Based on the foregoing, SBDC seeks an Order from this Court declaring that: (i) 33% ownership of the Sapphire is the property of SBDC; (ii) 50% ownership of the Diamond is the property of SBDC; (iii) the Debtor lacks any interest or ownership over those portions of the Sapphire and the Diamond; (iv) 33% of the ownership value of the Sapphire is not property of the Debtor's bankruptcy estate; (v) 50% of the ownership value of the Diamond is not property of the Debtor's bankruptcy estate.

52. A judgment expressly finding that (i) 33% ownership of the Sapphire is the property of SBDC and not the property of the Debtor or of the bankruptcy estate and (ii) 50% ownership of the Diamond is the property of SBDC and not the property of the Debtor or of the bankruptcy estate, is warranted under Bankruptcy Code section 541(b).

### THIRD CAUSE OF ACTION
**(Replevin against the Debtor and Essex)**

53. SBDC hereby repeats and realleges the allegations contained in paragraphs 1 through 51 above as if fully set forth herein.

54. As demonstrated previously herein, SBDC is the only rightful owner possessing good title to the Gemstones.

55. Essex is in possession of the Gemstones.

56. Despite SBDC's demand that Essex return the Gemstones to SBDC, Essex has refused to deliver the Gemstones to SBDC.

57. Essex's retention of the Gemstones is unlawful.

58. By reason of the foregoing, SBDC is entitled to the immediate possession of the Gemstones, and Essex must immediately deliver the Gemstones to SBDC.

## FOURTH CAUSE OF ACTION
### (Conversion against Essex)

59. SBDC hereby repeats and realleges the allegations contained in paragraphs 1 through 57 above as if fully set forth herein.

60. SBDC is the only rightful owner possessing good title to the Gemstones.

61. Neither the Debtor nor Essex has the right to exclusive possession of the Gemstones or to transfer title to or otherwise dispose of the Gemstones.

62. SBDC has demanded that Essex return the Gemstones.

63. Essex has refused to return the Gemstones and, thus, has unlawfully converted the Gemstones for its own use.

64. SBDC has the immediate right to possession of the Gemstones.

65. Essex must immediately and unconditionally relinquish and return the Gemstones to SBDC.

## FIFTH CAUSE OF ACTION
### Section 105(a) Injunctive Relief (TRO, and Preliminary Injunction)

66. SBDC hereby repeats and realleges the allegations contained in paragraphs 1 through 65 above as if fully set forth herein.

67. SBDC seeks an injunction under section 105(a) preventing Essex from transferring, selling, or otherwise disposing of the Gemstones currently in its possession pending further order of the Court concerning the claims at issue in this Adversary Proceeding.

68. Section 105(a) of the Bankruptcy Code authorizes the Court to issue "any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." Specifically, section 105(a) authorizes the Court to issue any orders that will further the purposes and goals of the Bankruptcy Code, assist in the orderly and effective administration of the Debtor's bankruptcy case, aid in the preservation of the assets of the Debtor's estate, and aid in the maximization of recovery to all of the Debtor's creditors.

69. This Court should utilize sections 105(a), 363 and 365 of the Bankruptcy Code to enjoin Essex from transferring, selling, or otherwise disposing of the Gemstones currently in its possession pending further order of the Court concerning this the claims asserted in this Adversary Proceeding, because Essex's continuing conduct could expose the Debtor's estate to considerable loss, possible additional claims, and a materially adverse impact. Granting the relief sought will aid in the protection of the Debtor's estate and help ensure their orderly administration.

70. Here, an injunction should be issued to ensure that the Gemstones are treated pursuant to the terms and conditions of the SBDC Memo and the SBDC Sapphire Memo without being undermined by Essex in the interim, who are changing the status quo in an attempt to undermine this Court's authority.

71. Denial of SBDC's request for a temporary restraining order and preliminary injunction would allow the Essex to prevent the Debtor's performance under the SBDC Memo and the SBDC Sapphire Memo. Preventing the Debtor's performance under the SBDC Memo or the SBDC Sapphire Memo will cause immense harm to the Debtor's estate by, among other things, causing additional exposure to the estate in the form of the damages, legal fees, interests, and other costs provided for in the SBDC Memo, and will furthermore irreparably harm SBDC.

72. The balance of hardships weighs heavily in favor of granting the requested relief, for all the reasons cited above. Further, granting injunctive relief will serve the public interest in effective and orderly administration of the bankruptcy estate.

73. The very nature of the injunction sought requires issuance of a temporary restraining order under Rule 7065, pending a hearing on the accompanying motion for a preliminary injunction. Such a temporary restraining order is properly granted to preserve the status quo and prevent irreparable injury to both SBDC and the estate and the estate's ability to maximize the return to their creditors pending a preliminary injunction hearing. Furthermore, under the facts and circumstances represented in these proceedings, SBDC respectfully submits that the amount of any security which the Court considers to be proper pursuant to Rule 7065(c) be set at not more than $100.

74. For all of the reasons set forth above in support of SBDC's request for a preliminary injunction, it is similarly appropriate to grant a temporary restraining order pending a hearing on the accompanying motion for a preliminary injunction restraining and enjoining Essex from transferring, selling, or otherwise disposing of the SBDC Stones or the Sapphire pending further order of the Court concerning this claims at issue in this Adversary Proceeding.

**PRAYER FOR RELIEF**

WHEREFORE, based upon the foregoing and the annexed Exhibits, SBDC respectfully requests that this Bankruptcy Court enter judgment in its favor granting the following relief:

(a)   That the Court enter a judgment on the First Cause of Action, declaring that: (i) the Ruby is the property of SBDC; (ii) the Debtor lacks any interest or ownership over the Ruby; and (iii) the Ruby is not property of the Debtor's bankruptcy estate;

(b)     That the Court enter a judgment on the Second Cause of Action, declaring that: (i) 33% ownership of the Sapphire is the property of SBDC; (ii) the Debtor lacks any interest or ownership over that portion of the Sapphire; (iii) 33% of the ownership value of the Sapphire is not property of the Debtor's bankruptcy estate; (iv) 50% ownership of the Diamond is the property of SBDC; (ii) the Debtor lacks any interest or ownership over that portion of the Diamond; (iii) 50% of the ownership value of the Diamond is not property of the Debtor's bankruptcy estate;

(c)     That the Court enter a judgment on the Third Cause of Action against the Debtor and Essex, ordering that SBDC is entitled to replevin and to the immediate possession of the Gemstones and Essex must immediately deliver the Gemstones to SBDC;

(d)     That the Court enter a judgment on the Fourth Cause of Action against Essex, holding that Essex converted the Gemstones from SBDC and, thus, must immediately and unconditionally relinquish and return the Gemstones to SBDC;

(e)     That the Court enter a judgment or judgments on the Fifth Cause of Action granting a temporary restraining order and a preliminary injunction restraining and enjoining Essex from transferring, selling, or otherwise disposing of the Gemstones pending further order of the Court concerning the claims at issue in this Adversary Proceeding; and

(f)     Granting SBDC such further and additional relief as the Court may deem just and proper under the circumstances.

Dated: New York, New York
        August 15, 2019

**MORRISON COHEN LLP**

By: __/s/ Robert K. Dakis_____
        Christopher Milito

Robert K. Dakis
Mark S. Jarashow
David J. Kozlowski
909 Third Avenue
New York, NY 10022
(212) 735-8600

Attorneys for S.B. Diamond Corp.