TROUTMAN SANDERS LLP
875 Third Avenue
New York, New York 10022
Tel: (212) 704-6000
Fax: (212) 704-6288
Aurora Cassirer
Brett D. Goodman
Alissa K. Piccione
Aurora.Cassirer@troutman.com
Brett.Goodman@troutman.com
Alissa.Piccione@troutman.com

*Counsel to Defendant*
*The D&M Capital Group, LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X
In re:

THE D&M CAPITAL GROUP, LLC,

                        Debtor.

Chapter 11

Case No. 19-11711 (SCC)

------------------------------------------------------------------X
S.B. DIAMOND CORP.,

                        Plaintiff,

-against-

ESSEX GLOBAL TRADING, INC., and THE D&M CAPITAL GROUP, LLC

                        Defendants.

Adv. Pro. No. 19-01332 (SCC)

------------------------------------------------------------------X

# DEFENDANT THE D&M CAPITAL GROUP, LLC'S ANSWER AND AFFIRMATIVE DEFENSES TO CROSS-CLAIM OF ESSEX GLOBAL TRADING, INC.

Defendant The D&M Capital Group, LLC ("D&M"), by its counsel, submits this Answer and Affirmative Defenses to the Cross-Claim filed by Defendant Essex Global Trading, Inc. ("Essex") and respectfully states as follows:

1. D&M states that paragraph 1 of the Cross-Claim describes the nature of Essex's action and relief sought but denies all remaining allegations in paragraph 1 of the Cross-Claim.

2. D&M admits the allegations in paragraph 2 of the Cross-Claim.

3. D&M states that it lacks knowledge or information necessary to form a belief about the truth of the allegations in paragraph 3 of the Cross-Claim.

4. Paragraph 4 of the Cross-Claim states a legal conclusion, to which no response is required. To the extent that a response is required, D&M states that it lacks knowledge or information necessary to form a belief about the truth of the allegations in paragraph 4 of the Cross-Claim.[1]

5. In paragraph 5 of the Cross-Claim, Essex purports to characterize the Complaint filed by SBDC.[2] D&M states that the Complaint and its exhibits speak for themselves such that no response to Essex's characterization is required. To the extent that a response is required, D&M states that, upon information and belief, the allegations in paragraph 5 of the Cross-Claim are generally accurate and, therefore, D&M admits them subject to the foregoing.

6. D&M states that the Complaint commencing this adversary proceeding and the Amended Complaint filed in the D&M Adversary Proceeding speak for themselves and, therefore, no response to the allegations in paragraph 6 of the Cross-Claim is required. To the extent that a

---

[1] D&M consents to the entry of a final order by the Court on the Cross-Claim if it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the U.S. Constitution.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings given to them in Essex's Cross-Claim.

response is required, D&M states that, upon information and belief, the allegations in paragraph 6 of the Cross-Claim are generally accurate and, therefore, D&M admits them subject to the foregoing.

7. D&M states that the Complaint commencing this adversary proceeding and the Amended Complaint filed in the D&M Adversary Proceeding speak for themselves and, therefore, no response to the allegations in paragraph 7 of the Cross-Claim is required. To the extent that a response is required, D&M states that, upon information and belief, the allegations in paragraph 7 of the Cross-Claim are generally accurate and, therefore, D&M admits them subject to the foregoing.

8. D&M states that the Complaint commencing this adversary proceeding and the Amended Complaint filed in the D&M Adversary Proceeding speak for themselves and, therefore, no response to the allegations in paragraph 8 of the Cross-Claim is required. To the extent that a response is required, D&M states that, upon information and belief, the allegations in paragraph 8 of the Cross-Claim are generally accurate and, therefore, D&M admits them subject to the foregoing.

9. D&M denies the allegations in paragraph 9 of the Cross-Claim.

10. D&M denies the allegations in paragraph 10 of the Cross-Claim.

11. D&M denies the allegations in paragraph 11 of the Cross-Claim.

12. D&M admits that it is in the business of buying and selling jewelry and precious gemstones but states that it lacks knowledge or information necessary to form a belief about the truth of the remaining allegations in paragraph 12 of the Cross-Claim.

13. D&M states that, since on or around August 2012, D&M has engaged from time to time in business dealings with Essex. To the extent that there are allegations in paragraph 13 of

the Cross-Claim characterizing the parties' business dealings in a manner that is inconsistent with that fact, D&M denies those allegations.

14. D&M admits that, on or about August 31, 2012, Essex began making loans to D&M but states that it lacks knowledge or information necessary to form a belief about the truth of the remaining allegations in paragraph 14 of the Cross-Claim.

15. D&M denies the allegations in paragraph 15 of the Cross-Claim.

16. D&M states that it lacks knowledge or information necessary to form a belief about the truth of the allegations in paragraph 16 of the Cross-Claim.

17. D&M states that it lacks knowledge or information necessary to form a belief about the truth of the allegations in paragraph 17 of the Cross-Claim.

18. D&M admits that it received a wire transfer of $1,000,000.00 and states that such wire transfer was from Ada Todd not Essex. As to the remaining allegations in paragraph 18 of the Cross-Claim, D&M denies them.

19. D&M admits the following: (a) on or about November 1, 2012, D&M received a check from Essex in the amount of $3,500,000.00; (b) on or about January 16, 2013, D&M received a check from Essex in the amount of $1,385,000.00; and (c) on or about February 8, 2013, D&M received a check from Essex, but denies the allegation in paragraph 19 of the Cross-Claim as to the amount of that check. As to any remaining allegations in paragraph 19 of the Cross-Claim, D&M lacks knowledge or information necessary to form a belief about the truth of those allegations.

20. D&M states that it lacks knowledge or information necessary to form a belief about the truth of the allegations in paragraph 20 of the Cross-Claim.

4

21. Upon information and belief, the allegations in paragraph 21 of the Cross-Claim are true and, therefore, D&M admits them.

22. D&M admits that, on or about December 17, 2013, it received a check from Essex in the amount of $2,180,000.00 and, upon information and belief, on or about December 17, 2013, the loan balance was $10,500,000.00. As to any remaining allegations in paragraph 22 of the Cross-Claim, D&M states that it lacks knowledge or information necessary to form a belief about the truth of those allegations.

23. Upon information and belief, the allegations in paragraph 23 of the Cross-Claim are true and, therefore, D&M admits them.

24. D&M denies the allegations in paragraph 24 of the Cross-Claim.

25. D&M admits that it is generally its practice to issue a memo when transferring a piece of its inventory to a consignee on consignment, but states that, pursuant to the consignment, the consignee must return the goods on demand, and such transfer is not an assignment of any goods. D&M further admits that certain memos to Essex have the word "collateral" printed on them or noted in handwriting. D&M, however, denies all other allegations in paragraph 25 of the Cross-Claim.

26. D&M denies the allegations in paragraph 26 of the Cross-Claim.

27. D&M states that Memo # 3610 speaks for itself and, therefore, D&M denies any allegation in paragraph 27 of the Cross-Claim that is inconsistent therewith. And to the extent that Essex alleges in paragraph 27 of the Cross-Claim that any goods listed on Memo # 3610 were or are collateral for any loan, D&M denies that allegation.

28. D&M states that Memo # 3610 speaks for itself and, therefore, D&M denies any allegation in paragraph 28 of the Cross-Claim that is inconsistent therewith.

5

29. D&M states that Memo # 3646 speaks for itself and, therefore, D&M denies any allegation in paragraph 29 of the Cross-Claim that is inconsistent therewith. And to the extent that Essex alleges in paragraph 29 of the Cross-Claim that any goods listed on Memo # 3646 were or are collateral for any loan, D&M denies that allegation.

30. D&M states that Memo # 3646 speaks for itself and, therefore, D&M denies any allegations in paragraph 30 of the Cross-Claim inconsistent therewith.

31. D&M denies that Memo # 3610 and Memo # 3646 "reflect collateral" for any loan. D&M admits, however, that, on or about June 11, 2013, D&M received a check from Essex in the amount of $500,000.00. As to the remaining allegations in paragraph 31 of the Cross-Claim, D&M lacks knowledge or information necessary to form a belief about the truth of those allegations.

32. D&M denies the allegations in paragraph 32 of the Cross-Claim.

33. D&M states that Memo # 4215 speaks for itself and, therefore, denies any allegation in paragraph 33 of the Cross-Claim that is inconsistent therewith. And to the extent that Essex alleges in paragraph 33 of the Cross-Claim that any goods listed on Memo # 4215 were or are collateral for any loan, D&M denies that allegation.

34. D&M states that Memo # 4269 speaks for itself and, therefore, D&M denies any allegation in paragraph 34 of the Cross-Claim that is inconsistent therewith.

35. D&M states that Memo # 4269 speaks for itself and, therefore, denies any allegation in paragraph 35 of the Cross-Claim that is inconsistent therewith. And to the extent that Essex alleges in paragraph 35 of the Cross-Claim that any goods listed on Memo # 4269 were or are collateral for any loan, the D&M denies that allegation.

36. D&M states that Memo # 4277 speaks for itself and, therefore, D&M denies any allegation in paragraph 36 of the Cross-Claim that is inconsistent therewith. And to the extent that

Essex alleges in paragraph 36 of the Cross-Claim that any goods listed on Memo # 4277 were or are collateral for any loan, D&M denies that allegation.

37.     D&M states that Memo # 4293 speaks for itself and, therefore, D&M denies any allegation in paragraph 37 of the Cross-Claim that is inconsistent therewith. And to the extent that Essex alleges in paragraph 37 of the Cross-Claim that any goods listed on Memo # 4293 were or are collateral for any loan, D&M denies that allegation.

38.     D&M states that Memo # 4374 speaks for itself and, therefore, D&M denies any allegation in paragraph 38 of the Cross-Claim that is inconsistent therewith. And to the extent that Essex alleges in paragraph 38 of the Cross-Claim that any goods listed on Memo # 4374 were or are collateral for any loan, D&M denies that allegation.

39.     D&M states that Memo # 4456 speaks for itself and, therefore, D&M denies any allegation in paragraph 39 of the Cross-Claim that is inconsistent therewith. And to the extent that Essex alleges in paragraph 39 of the Cross-Claim that any goods listed on Memo # 4456 were or are collateral for any loan, D&M denies that allegation.

40.     D&M states that Memo # 4488 and the Amended Complaint in the D&M Adversary Proceeding speak for themselves and, therefore, D&M denies any allegation in paragraph 40 of the Cross-Claim that is inconsistent therewith. And to the extent that Essex alleges in paragraph 40 of the Cross-Claim that any goods listed on Memo # 4488 were or are collateral for any loan, D&M denies that allegation.

41.     D&M states that Memo # 4608 speaks for itself and, therefore, D&M denies any allegation in paragraph 41 of the Cross-Claim that is inconsistent therewith. And to the extent that Essex alleges in paragraph 41 of the Cross-Claim that any goods listed on Memo # 4608 were or are collateral for any loan, D&M denies that allegation.

42. D&M denies the allegation in paragraph 42 of the Cross-Claim that "each of the Memos convey[ed] a security interest for the First Loan." D&M admits that, generally, it uses the same form of memo in its consignment business as the "Essex Memos" and other "Memos" referenced in paragraph 42 of the Cross-Claim, but D&M denies that the form of memo for the "Essex Memos" and other "Memos" referenced in paragraph 42 of the Cross-Claim were "the same" to the extent that "the same" means identical. As to the remaining allegations in paragraph 42 of the Cross-Claim, the "Memos" referenced therein speak for themselves and, therefore, D&M denies any allegation in paragraph 42 of the Cross-Claim inconsistent therewith.

43. D&M denies the allegations in paragraph 43 of the Cross-Claim.

44. D&M denies the allegations contained in paragraph 44 of the Cross-Claim but states that Essex may have had or been given possession of the underlying gems pursuant to the consignment language of the Memos and, therefore, the Memos would also "denote who had custody of the underlying gems at the time" in addition to evidencing consignment.

45. Paragraph 45 of the Cross-Claim states a legal conclusion, to which no response is required. To the extent that a response is required, D&M denies the allegations in paragraph 45 of the Cross-Claim.

46. D&M denies the allegations in paragraph 46 of the Cross-Claim.

47. D&M denies that it made any "commitment" to provide any collateral, "sufficient" or otherwise, to Essex for any loan. As to the remaining allegations in paragraph 47 of the Cross-Claim, D&M lacks knowledge or information necessary to form a belief about the truth of those allegations.

48. D&M admits that, upon information and belief, on or about June 27, 2017, the balance of the loan then outstanding was reduced to $0.00 but denies all other allegations in paragraph 48 of the Cross-Claim.

49. D&M denies the allegations in paragraph 49 of the Cross-Claim.

50. D&M admits that the total principal amount of the loan as of July 2017 was $5,500,000.00 and that, as of November 2017, the total principal amount of the loan was $6,500,000.00. D&M, however, denies the remaining allegations in paragraph 50 of the Cross-Claim.

51. D&M lacks knowledge or information necessary to form a belief about the truth of the allegations contained in paragraph 51 of the Cross-Claim.

52. D&M denies the allegations in paragraph 52 of the Cross-Claim.

53. D&M states that Memo # 4736 speaks for itself and, therefore, D&M denies any allegation in paragraph 53 of the Cross-Claim that is inconsistent therewith. And to the extent that Essex alleges in paragraph 53 of the Cross-Claim that any goods listed on Memo # 4736 were or are collateral for any loan, D&M denies that allegation.

54. D&M states that Memo # 4736 speaks for itself and, therefore, D&M denies any allegation in paragraph 54 of the Cross-Claim that is inconsistent therewith. And to the extent that Essex alleges in paragraph 54 of the Cross-Claim that any goods listed on Memo # 4736 were or are: (i) collateral for any loan, and/or (ii) represented by D&M as being 100% owned by D&M, D&M denies those allegations.

55. D&M states that Memo # 4743 speaks for itself and, therefore, D&M denies any allegation in paragraph 55 of the Cross-Claim that is inconsistent therewith. And to the extent that Essex alleges in paragraph 55 of the Cross-Claim that any goods listed on Memo # 4743 were or

are: (i) collateral for any loan, and/or (ii) represented by D&M as being 100% owned by D&M, D&M denies those allegations.

56. D&M states that Memo # 4856 speaks for itself and, therefore, D&M denies any allegation in paragraph 56 of the Cross-Claim that is inconsistent therewith. And to the extent that Essex alleges in paragraph 56 of the Cross-Claim that any goods listed on Memo # 4856 were or are: (i) collateral for any loan, and/or (ii) represented by D&M as being 100% owned by D&M, D&M denies those allegations.

57. The Amended Complaint that D&M filed in the D&M Adversary speaks for itself and, therefore, D&M denies any allegation in paragraph 57 of the Cross-Claim that is inconsistent therewith.

58. To the extent that Essex alleges in paragraph 58 of the Cross-Claim that D&M inflated the value of goods described in any Memos, D&M denies that allegation. As to the remaining allegations in paragraph 58 of the Cross-Claim, the Amended Complaint filed in the D&M Adversary Proceeding and "Memos" referenced in paragraph 58 of the Cross-Claim speak for themselves and, therefore, D&M denies any allegation in paragraph 58 of the Cross-Claim that is inconsistent therewith.

59. D&M states that Memo # 5072 speaks for itself and, therefore, D&M denies any allegation in paragraph 59 of the Cross-Claim that is inconsistent therewith. And to the extent that Essex alleges in paragraph 59 of the Cross-Claim that any goods listed on Memo # 5072 were or are collateral for any loan, D&M denies those allegations.

60. D&M states that the Amended Complaint filed in the D&M Adversary Proceeding and Memo # 5251 speak for themselves and, therefore, D&M denies any allegation in paragraph 60 of the Cross-Claim that is inconsistent therewith. And to the extent that Essex alleges in

paragraph 60 of the Cross-Claim that any goods listed on Memo # 5251 were or are collateral for any loan, D&M denies those allegations.

61. D&M denies the allegation in paragraph 61 that "[e]ach of the Memos convey[ed] a security interest for the Second Loan." D&M admits that, generally, it uses the same form of memo in its consignment business as the "Essex Memos" and other "Memos" referenced in paragraph 61 of the Cross-Claim, but D&M denies that the form of memo for the "Essex Memos" and other "Memos" referenced in paragraph 61 of the Cross-Claim were "the same" to the extent that "the same" means identical. As to the remaining allegations in paragraph 61 of the Cross-Claim, the "Memos" referenced therein speak for themselves and, therefore, D&M denies any allegation in paragraph 61 that is inconsistent therewith.

62. D&M denies the allegations in paragraph 62 of the Cross-Claim.

63. Paragraph 63 of the Cross-Claim states a legal conclusion, to which no response is required. To the extent that a response is required, D&M denies the allegations in paragraph 63 of the Cross-Claim.

64. D&M denies the allegations in paragraph 64 of the Cross-Claim.

65. D&M denies that it made any "commitment" to provide any collateral, "sufficient" or otherwise for any loan. As to the remaining allegations in paragraph 65 of the Cross-Claim, D&M lacks knowledge or information necessary to form a belief about the truth of those allegations.

66. D&M denies the allegations in paragraph 66 of the Cross-Claim.

67. D&M denies the allegations in paragraph 67 of the Cross-Claim.

68. D&M denies the allegations in paragraph 68 of the Cross-Claim.

69. D&M denies the allegations in paragraph 69 of the Cross-Claim.

70. D&M denies the allegations in paragraph 70 of the Cross-Claim.

71. D&M denies the allegations in paragraph 71 of the Cross-Claim but admits that any "Commission Expense" reflected on Invoice # 11429 was not a commission.

72. D&M denies the allegations in paragraph 72 of the Cross-Claim.

73. D&M denies the allegations in paragraph 73 of the Cross-Claim.

74. To the extent that Essex alleges in paragraph 74 of the Cross-Claim that a payment of $160,000.00 was an interest payment for January 2015, D&M lacks knowledge or information necessary to form a belief about the truth of that allegation. As to the remaining allegations in paragraph 74 of the Cross-Claim, D&M states that Invoice # 11601 speaks for itself and, therefore, D&M denies any allegation in paragraph 74 of the Cross-Claim that is inconsistent therewith.

75. To the extent that Essex alleges in paragraph 75 of the Cross-Claim that the $300,000.00 price represented payment on account of two months interest on a loan, Essex lacks knowledge or information necessary to form a belief about the truth of that allegation. As to the remaining allegations in paragraph 75 of the Cross-Claim, D&M states that Invoice # 11945 speaks for itself and, therefore, D&M denies any allegation in paragraph 75 of the Cross-Claim that is inconsistent therewith.

76. D&M denies the allegations in paragraph 76 of the Cross-Claim.

77. D&M denies the allegations in paragraph 77 of the Cross-Claim.

78. D&M admits the allegations in paragraph 78 of the Cross-Claim.

79. D&M admits the allegations in paragraph 79 of the Cross-Claim.

80. D&M denies the allegations in paragraph 80 of the Cross-Claim.

81. D&M states that it lacks knowledge or information necessary to form a belief about the truth of the allegations in paragraph 81 of the Cross-Claim.

82. D&M denies the allegations in paragraph 82 of the Cross-Claim.

83. D&M admits the allegation that, in July of 2018, D&M wrote a check to Essex dated July 20, 2018 for $365,000.00 to pay interest arrears. D&M, however, denies the remaining allegations of paragraph 83 of the Cross-Claim.

84. D&M denies the allegations in paragraph 84 of the Cross-Claim.

85. D&M admits the allegation that Essex did not cash the check issued by D&M on or about July 10, 2018, but otherwise denies the allegations in paragraph 85 of the Cross-Claim.

86. D&M admits that it issued monthly payment checks to Essex on or about August 6, 2018, September 7, 2018, and October 1, 2018, which checks were not cashed by Essex. D&M, however, denies the remaining allegations in paragraph 86 of the Cross-Claim.

87. D&M admits the allegation that it has not made any payments to Essex since October 2018 but denies the remaining allegations in paragraph 87 of the Cross-Claim.

88. D&M denies the allegations in paragraph 88 of the Cross-Claim.

89. D&M denies the allegations in paragraph 89 of the Cross-Claim.

90. D&M denies, to the extent alleged in paragraph 90 of the Cross-Claim, that D&M, through Moty Spector, made an oral agreement pursuant to which Essex was authorized to retain any Gemstones in satisfaction of loan debt. As to the remaining allegations in paragraph 90, D&M lacks knowledge or information necessary to form a belief about the truth of those allegations.

91. D&M denies the allegations in paragraph 91 of the Cross-Claim.

92. D&M denies the allegations in paragraph 92 of the Cross-Claim.

93. D&M denies the allegations in paragraph 93 of the Cross-Claim.

94. D&M denies the allegations in paragraph 94 of the Cross-Claim and states that D&M is an owner of the Gemstones.

95. D&M states that it lacks knowledge and information necessary to form a belief about the truth of the allegations in paragraph 95 of the Cross-Claim.

96. D&M denies the allegation that it represented to Essex that "Essex could retain ownership of the Gemstones in satisfaction of the Second Loan." As to the remaining allegations of paragraph 96 of the Cross-Claim, D&M states that it lacks knowledge and information necessary to form a belief about the truth of those allegations.

97. Paragraph 97 of the Cross-Claim states a legal conclusion, to which no response is required. To the extent that a response is required, D&M denies the allegations in paragraph 97 of the Cross-Claim.

98. D&M repeats and realleges each and every response contained in the foregoing paragraphs as if set forth at length herein.

99. D&M denies that it represented to Essex that "its debt was secured by collateral owned exclusively by D&M." As to the remaining allegations in paragraph 99 of the Cross-Claim, D&M states that it lacks knowledge and information necessary to form a belief about the truth of those allegations.

100. D&M states that it lacks knowledge and information necessary to form a belief about the truth of the allegations in paragraph 100 of the Cross-Claim.

101. D&M states that it lacks knowledge and information necessary to form a belief about the truth of the allegations in paragraph 101 of the Cross-Claim.

102. D&M denies the allegations in paragraph 102 of the Cross-Claim.

103. D&M denies the allegations in paragraph 103 of the Cross-Claim.

104. D&M denies the allegation in paragraph 104 of the Cross-Claim.

105. D&M denies that it was reasonable for Essex to believe "that the Second Loan was satisfied by its retention of ownership of the Gemstones." As to the remaining allegations in paragraph 105 of the Cross-Claim, D&M states that it lacks knowledge and information necessary to form a belief about the truth of those allegations.

106. D&M denies the allegations in paragraph 106 of the Cross-Claim.

107. D&M denies, to the extent alleged in paragraph 107 of the Cross-Claim, that D&M, through Moty Spector, made an oral agreement pursuant to which Essex was authorized to retain any Gemstones in satisfaction of loan debt. As to the remaining allegations in paragraph 107 of the Cross-Claim, D&M states that it lacks knowledge or information necessary to form a belief about the truth of those allegations.

108. D&M denies the allegations in paragraph 108 of the Cross-Claim.

109. D&M denies the allegations in paragraph 109 of the Cross-Claim.

110. D&M denies the allegations in paragraph 110 of the Cross-Claim.

111. Paragraph 111 of the Cross-Claim states a legal conclusion, to which no response is required. To the extent that a response is required, D&M denies the allegations in paragraph 111 of the Cross-Claim.

112. D&M denies the allegation that it concealed "the interests in the Gemstones asserted by SBDC." As to the remaining allegations in paragraph 112 of the Cross-Claim, D&M states that it lacks knowledge or information necessary to form a belief about the truth of those allegations.

113. D&M denies the allegations in paragraph 113 of the Cross-Claim.

114. D&M denies the allegations in paragraph 114 of the Cross-Claim.

In response to the unnumbered paragraph beginning "WHEREFORE," D&M denies that Essex is entitled to judgment against D&M or any relief whatsoever from D&M and its estate.

## AFFIRMATIVE DEFENSES

In further response to the Cross-Claim, D&M asserts the following affirmative defenses, without conceding that it bears the burden of persuasion as to any of them:

### FIRST AFFIRMATIVE DEFENSE

Essex fails to state any claim upon which relief may be granted against D&M and fails to state facts sufficient to entitle Essex to the relief sought or to any other relief whatsoever from D&M.

### SECOND AFFIRMATIVE DEFENSE

The Cross-Claim fails to the extent that the Bankruptcy Code or other law precludes the relief requested therein.

### THIRD AFFIRMATIVE DEFENSE

The Cross-Claim fails to the extent that it is barred by unclean hands.

### FOURTH AFFIRMATIVE DEFENSE

The Cross-Claim fails because, by virtue of Essex's own conduct or the conduct of its agents or representatives, Essex is barred from recovering on the Cross-Claim interposed against D&M.

### FIFTH AFFIRMATIVE DEFENSE

The Cross-Claim fails because it is barred by Essex's own fraud.

### SIXTH AFFIRMATIVE DEFENSE

The Cross-Claim fails to the extent barred by the applicable statute of limitations.

### SEVENTH AFFIRMATIVE DEFENSE

The Cross-Claim fails to the extent barred by the applicable statute of frauds.

### EIGHTH AFFIRMATIVE DEFENSE

The Cross-Claim fails to the extent barred by failure of consideration.

### NINTH AFFIRMATIVE DEFENSE

The Cross-Claim fails to the extent barred by the doctrine of unconscionability.

### TENTH AFFIRMATIVE DEFENSE

The Cross-Claim fails to the extent Essex released D&M from liability for the alleged debt.

### ELEVENTH AFFIRMATIVE DEFENSE

The Cross-Claim fails because the underlying loans from Essex to D&M were usurious under applicable law.

### TWELFTH AFFIRMATIVE DEFENSE

The Cross-Claim fails to the extent barred by laches, waiver, or estoppel.

### RESERVATION OF RIGHTS

D&M reserves the right to assert any other affirmative defenses as may be revealed by discovery or otherwise.

[Continued on the following page.]

WHEREFORE, D&M respectfully requests judgment in its favor (i) dismissing Essex's Cross-Claim with prejudice, and (ii) awarding whatever other and further relief the Court deems just and proper.

Dated: New York, New York
October 7, 2019

TROUTMAN SANDERS LLP

By: /s/ Brett D. Goodman
    Aurora Cassirer
    Brett D. Goodman
    Alissa K. Piccione
    875 Third Avenue
    New York, New York 10022
    Tel.: (212) 704-6000
    Fax: (212) 704-6288

*Counsel for Defendant The D&M Capital Group, LLC*